UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KERRY IRENE HOLYOAK,

    Plaintiff,

  vs.

CITIBANK N.A.; and DOES 1-
10, INCLUSIVE,

    Defendants.

Case No.
6:25-cv-1175-PGB-RMN

### REPORT AND RECOMMENDATION

This matter is before the Court without oral argument on Defendant Citibank N.A.'s Second Motion to Compel Arbitration. Dkt. 22. Plaintiff responded in opposition (Dkt. 26), and upon the Court's request, Defendant filed a reply in support of its Motion (Dkt. 42). After careful consideration of the parties' arguments, I respectfully recommend the Court grant Citibank's Motion and stay this case.

## I.   BACKGROUND

On June 30, 2025, *pro se* Plaintiff initiated a lawsuit against Defendant Citibank[1] alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA"), fraudulent misrepresentation and concealment, and unjust enrichment. *See* Dkt. 1. Plaintiff alleges that Citibank's collection practices in connection to her Citi Diamond Preferred credit card and her Macy's American Express credit card (issued and served by Citibank) violated the above cited statutes.

Citibank filed the instant Motion arguing that Plaintiff's claims fall within the arbitration provisions of her card agreements entered into when she opened the accounts. *See* Dkt. 22. These Agreements read:

ARBITRATION

PLEASE READ THIS PROVISION OF THE AGREEEMENT CAREFULLY.

This section provides that disputes may be resolved by binding arbitration. Arbitration replaces the right to go to court, have a jury trial or initiate or participate in a class action. In arbitration, disputes are resolved by an arbitrator, not a judge or jury.

---

[1] Plaintiff also includes "Does 1-10" as named defendants. But "fictitious party pleading is not permitted in federal court," *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (per curiam), and so the Court should dismiss any claims against those parties.

> Arbitration procedures are simpler and more limited than in court. This arbitration provision is governed by the Federal Arbitration Act (FAA), and shall be interpreted in the broadest way the law will allow.

Dkt. 22-1 at 381; 22-2 at 398.[2] The Agreements then explained what are "covered claims," arbitration limits, and how it works and who pays for arbitration. *See id.* The Agreement states that the arbitration provision "survive[s] changes in this Agreement and termination of the account or the relationship between [plaintiff] and [defendant]" (Dkt 22-1 at 382), and that there is a 45-day window to reject the arbitration provision in its totality. *Id.* at 382.

## II.  LEGAL STANDARDS

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration provisions. *Hill v. Rent-A-Ctr., Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005). The FAA provides a "national policy favoring arbitration of claims that parties contract to settle in that manner." *Vaden v. Discover Bank*, 556 U.S. 49, 58 (2009) (quoting *Preston v. Ferrer*, 552 U.S. 346, 353 (2008)) (internal quotations omitted). Under the FAA, arbitration requirements in contracts "involving commerce" are "valid, irrevocable, and enforceable." 9 U.S.C. § 2.

Because the FAA enforces contract rights, the Supreme Court has said that the first principle flowing from it is that "a party cannot

---

[2] In this Report, pin citations to the record reference the PageID found in the CM/ECF header of each page.

be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). The second principle, which the Court says necessarily follows from the first, is that the question of arbitrability "is undeniably an issue for judicial determination." *Id.* at 649. And unless the parties "clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* (citing *Warrior & Gulf Navigation Co.*, 363 U.S. at 582–83).

Parties may also agree who gets to decide the question of arbitrability. *See U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014). And so, courts must first consider who decides the question of arbitrability. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). If the parties to a contract delegate the authority to decide to the arbitrator, then "a court possess no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 529 (2019).

Furthermore, courts generally apply state contract law when considering these questions. *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

## III.  ANALYSIS

The FAA mandates a determination regarding whether a valid arbitration agreement exists that encompasses the parties' dispute. *Stahl v. Mehlaff*, 574 F. Supp. 3d 700, 703 (D. S.D. 2021). It is axiomatic that courts "should apply ordinary state-law principles that govern the formation of contracts" when deciding whether parties agreed to arbitrate a certain matter. *Senti v. Sanger Works Factory, Inc.*, No. 6:06-cv-1903, 2007 WL 1174076, at *5 (M.D. Fla. Apr. 18, 2027) (quoting *First Options of Chiago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The applicable credit card Agreements at issue in this case specify that "[f]ederal law and the law of South Dakota govern the terms and enforcement" of the agreement. *See* Dkt. 22 at 340, 341; *see also Mazzoni Farms, Inc. v. E.I. Dupont De Nemours & Co.*, 761 So.2d 306, 311 (Fla. 2000) ("Florida enforces choice-of-law provisions unless the law of the chosen forum contravenes strong public policy.").

In response to the Motion, Plaintiff argues that the arbitration clause at issue cannot be enforced because (1) "the securitization and assignment of Plaintiff's accounts materially altered the parties relationship without notice or opportunity to reject arbitration"; (2) the arbitration provision is unconscionable; (3) the provisions improperly waive statutory rights; (4) the arbitration provisions do not clearly and unmistakably delegate issues of arbitrability; and (5) there was no clear and enforceable agreement to arbitrate. *See* Dkt. 26.

In this dispute, a valid arbitration agreement exists requiring this Court to compel arbitration and stay this case in the interim. Plaintiff received notice of the Card Agreement(s) upon the opening of her respective accounts. *See* Dkt. 22 at 388–339; *see also* Dkts. 22-1, 22-2. There is no evidence that Plaintiff timely opted out of the arbitration provision, and Plaintiff made subsequent charges to those accounts. Dkts. 22-1, 22-2. Pursuant to South Dakota law, her use of the credit cards and failing to cancel the accounts in writing after thirty days creates a binding contract between the plaintiff and defendant with respect to those cards she used. *See* S.D. Codified Laws § 54-11-9 ("The use of an accepted credit card or the issuance of a credit card agreement and the expiration of thirty days from the date of issuance without written notice from a card holder to cancel the account creates a binding contract between the card holder and the card issuer[.]"); *Fedotov v. Peter T. Roach & Assocs., P.C.*, No. 03-cv-8823, 2006 WL 692002, at *2 (S.D.N.Y. Mar 16, 2006) (applying South Dakota law).

Plaintiff's arguments in opposition to compelling arbitration all largely rely on application of Florida law. To the extent any of the arguments in opposition rely on Florida law, they are inapplicable and should be disregarded because the card agreements at issue invoke South Dakota law.[3]

---

[3] Even if Florida law did apply, the elements of an enforceable agreement under Florida law are met here. In the declarations attached

Plaintiff's claims fall squarely within the scope of the arbitration agreements.[4] The agreements are broad and cover "any claim, dispute or controversy between you and [defendant] arising out of or related to your Account, a previous related Account or our relationship." *See* Dkt. 22 at 342. And because Plaintiff's alleges that Citibank violated the FDCPA and FCRA in connection with activities taken in relation to her credit cards, these allegations "arise out of" or are "related to" Plaintiff's accounts with Citibank. *See generally* Dkt. 26.

The Agreements also contain a delegation provision that reserve the issue of arbitrability for the arbitrator. *See Attix v. Carrington Mortgage Servs., LLC,* 35 F. 4th 1284, 1295 (11th Cir. 2002) ("An

---

to the Motion, employees of Citibank confirmed that the bank sent Plaintiff the card agreement with her credit cards. The provisions at issue contain clear instructions for rejecting the arbitration agreement. *See* Dkts. 22-1 at 363–64, 22-2 at 392–93. The declarations confirm that Citibank has no record of Plaintiff rejecting the provisions. Dkts. 22-1 at 364, 22-2 at 393. Plaintiff continued to use her credit cards. *See* Dkts. 22-1 at 366–90, 22-1 at 402–05. A quick view of the Agreements shows that they sufficiently specify the "essential terms." And waiving a right to proceed to a jury trial is valid consideration for arbitration agreements. *See Orellana v. Roblox Corp.,* 769 F. Supp. 3d 1273, 1283 (M.D. Fla. 2025) ("There is valid consideration for the arbitration agreement because the parties mutually waived their right to suit in favor of arbitration.").

[4] Plaintiff does not dispute that her claims fall within the scope of the Agreements.

agreement to arbitrate threshold arbitrability issues is often called a 'delegation' agreement, because it delegates the resolution of disputes about the arbitrability of the parties' claims to an arbitrator."). It is true that "when parties incorporate the rules of the [FAA] into their contract, they 'clearly and unmistakably agree[] that the arbitrator should decide whether the arbitration clause [applies].'" *U.S. Nutraceuticals, LLC v. Cyanotech Corp.*, 769 F.3d 1308, 1311 (11th Cir. 2014) (quoting *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005)). These Agreements incorporate the rules of the FAA, which provide that the arbitrator has the power to decide arbitrability of any claim. Dkt. 22 at 343. Thus, the final analysis of arbitrability lies with the arbitrator, not the Court.

And finally, Plaintiff fails to show that these agreements are procedurally or substantively unconscionable. As explained above, Plaintiff provides no argument under South Dakota law. And even though South Dakota does recognize the concept of procedural and substantive unconscionability, *see Nygaard v. Sioux Valley Hosp. & Health Sys.*, 731 N.W. 2d 184, 194–95 (S.D. 2007), any such argument would fail here. The Agreements at issue provided a "meaningful choice"—that is, opt out of the arbitration provision. *See* Dkt. 22 at 340, 341; *see also Solomon v. Citibank, N.A.*, No. 8:25-cv-2367, 2026 WL 227122, at *4 (M.D. Fla. Jan. 5, 2026) (rejecting a similar claim by a pro se plaintiff under South Dakota law and sending the claims to

arbitration pursuant to a substantially similar arbitration agreement). Consequently, because there is a binding contract between plaintiff and Citibank, and because Plaintiff made purchases and failed to cancel the card within 30 days of issuance, Plaintiff has failed to show that the Agreements are invalid under applicable law. I therefore respectfully recommend the Court stay this case and direct the parties to proceed to arbitration.

## IV.   RECOMMENDATIONS

Accordingly, I respectfully **RECOMMEND** the Court:

1.      **GRANT** Defendant's (Dkt. 22) Renewed Motion to Compel Arbitration and Stay Proceedings;

2.      **COMPEL** the parties to proceed to arbitration;

3.      **STAY** the case pending the parties' arbitration; and

4.      **DIRECT** the Clerk to administratively close this case.

### <u>Notice to Parties</u>

"Within 14 days after being served with a copy of [a report and recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters review by the district judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to

challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

**ENTERED** in Orlando, Florida, on April 14, 2026.

_____
ROBERT M. NORWAY
*United States Magistrate Judge*

Copies to:

Hon. Paul G. Byron

Kerry Irene Holyoak
1616 Concierge Boulevard
Daytona Beach, Florida 32117

Counsel of Record